IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| DEEDRA M. BREWER,<br><br>               Plaintiff,<br><br>   vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>               Defendant. | CV 10-44-BLG-CSO<br><br><br>**ORDER ON<br>MOTION FOR REMAND** |

Plaintiff Deedra M. Brewer ("Brewer") initiated this action to obtain judicial review of Defendant Commissioner of Social Security's ("Commissioner's") decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  *Pl.'s Complt. (Court Doc. 2) (April 21, 2010).*  This case has been assigned to the undersigned Magistrate Judge, upon the consent of the parties, for all purposes. Court Doc. 8.

Now pending before the Court is the Commissioner's Motion for

Remand (Court Doc. 22).[1]  For the reasons stated below, the Court
concludes the Commissioner's motion should be granted.

## I.   PROCEDURAL BACKGROUND

Brewer filed an application for DIB in February 2008.

*Administrative Record Transcript ("TR") at 68-72.*  Brewer alleges a

disability onset date of May 30, 2005.  *Id.*  Her application for

benefits was denied initially, upon reconsideration, and after an

administrative hearing before an Administrative Law Judge ("ALJ").

*Id. at 8-17, 24-66.*  Brewer appealed the ALJ's determination, but the

Appeals Council denied her request for review; thus, the ALJ's

decision became the Commissioner's final decision for purposes of

judicial review on January 29, 2010.  *Id. at 1-5.*  Brewer filed this

action on April 21, 2010.  *Court Doc. 2 at 3.*

## II.   STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the

Commissioner's decision only where the decision is not supported by

---

[1]Defendant moves for remand pursuant to sentence four of 42
U.S.C. § 405(g).  This section permits the Court to affirm, modify, or
reverse the Commissioner, with or without remanding the cause for
rehearing by the Social Security Administration.  Consequently, the
Court will treat the Commissioner's motion as one for partial
summary judgment and remand.

substantial evidence or where the decision is based on legal error.

*Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42

U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla,

but less than a preponderance."  *Id.* (citing *Bayliss v. Barnhart*, 427

F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks

omitted)).  "It is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id.* (internal quotation

marks and citation omitted).  The Court must consider the record as

a whole, weighing both the evidence that supports and detracts from

the Commissioner's conclusion, and cannot affirm the ALJ "by

isolating a specific quantum of supporting evidence."  *Robbins v. Soc.

Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation

marks and citation omitted).

       The ALJ is responsible for determining credibility, resolving

conflicts in medical testimony, and resolving ambiguities.  "Where

the evidence is susceptible to more than one rational interpretation,

one of which supports the ALJ's decision, the ALJ's conclusion must

be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

(internal citation omitted).

### III.   **BURDEN OF PROOF**

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

> 1.   The claimant must first show that he or she is not currently engaged in substantial gainful activity.  *Tackett*, 180 F.3d at 1098.

> 2.   If not so engaged, the claimant must next show that he or

she has a severe impairment.  *Id.*

3.  The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments").  *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.  If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here.  *Id.*  "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step."  *Id.* at 1098-1099.

5.  If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through

four, but at the fifth step the Commissioner bears the burden of

establishing that there is other work in significant numbers in the

national economy that the claimant can perform.  *Id.*  The

Commissioner can meet this burden via the testimony of a vocational

expert or reference to the Medical-Vocational Guidelines at 20 C.F.R.

Pt. 404, Subpt. P, App. 2.  *Id.*  If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.   **THE ALJ's OPINION**

Brewer contends that she is disabled and unable to work due to Fibromyalgia, Epstein-Barr Virus, and Restless Leg Syndrome.  *TR at 29, 52*.  The ALJ followed the five-step sequential evaluation process in considering Brewer's claims.  The ALJ first found that Brewer has not engaged in any periods of substantial gainful activity since May 30, 2005, the alleged onset date. *Id. at 10 (Finding No. 2)*.

At step two, the ALJ concluded that Brewer's fibromyalgia constituted a severe impairment.  *Id. (Finding No. 3)*.  The ALJ noted that in addition to fibromyalgia, Brewer has been diagnosed with chronic sinusitis, bilateral temporomandibular joint dysfunction, chronic daily headaches, irritable bowel syndrome, depression, and anxiety; however, he noted that "the evidence does not establish that these impairments were severe."  *Id. at 10-11*.  The ALJ next concluded that while Brewer has at least one severe impairment, her impairments did not meet or medically equal any of

-6-

the listed impairments.  *Id. at 11 (Finding No. 4)*.

At step four the ALJ found that Brewer has the residual

functional capacity ("RFC") to:

> lift up to 20 pounds occasionally and 10 pounds frequently.  She
> could stand and/or walk up to six hours in an eight-hour
> workday, and she could sit up to six hours in an eight-hour
> workday.  She was unlimited in her ability to push and/or pull,
> and she had no postural, manipulative, visual, communicative,
> or environmental limitations.

*Id. at 13 (Finding No. 5)*.  Based on this RFC, the ALJ determined

that Brewer, "[t]hrough the date last insured ... was capable of

performing past relevant work as a lawyer."  *Id. at 16 (Finding No.*

*6)*.  Consequently, the ALJ held that Brewer was not under a

disability during the relevant time period.  *Id. (Finding No. 7)*.

## V.   __PARTIES' ARGUMENTS__

The Commissioner concedes that the ALJ erred, but disagrees

with Brewer regarding the nature of the error and the proper

remedy.  *Defendant's Memorandum in Support of Motion to Remand*

*(Court Do. 23) at 10*.  "The Commissioner concedes only that the ALJ

erred in finding that [Brewer] had no severe mental impairment and

including no mental limitations in the [RFC] assessment."  *Id.*  He

argues that the ALJ's determinations regarding Brewer's physical impairments should be affirmed. *Id. at 11.* Thus, the Commissioner's position is that the ALJ should be reversed only with respect to his conclusions regarding Brewer's mental impairments and their corresponding functional limitations, and the matter should be remanded to the agency for further development of the record with respect to these issues. *Id. at 17.*

In response, Brewer argues that she has "been physically ill since before 2001." *Response to Motion for Remand (Court Doc. 24) at 3.* She contends that "*OBJECTIVE* evidence" proves the existence and severity of her physical impairments. *Id. (emphasis in original).* Furthermore, she argues this objective evidence is corroborated by her long history of consistent statements regarding her symptoms. *Id.*

Brewer also argues that the Commissioner mischaracterizes the medical evidence. She claims the Commissioner misrepresents Dr. Norma Bilbool's impression statements: "Rule out fibromyalgia" and "Rule out chronic fatigue syndrome." *Id. at 3-4; TR at 179.* She asks the Court to construe "impression" as a medical "'term of art'

used by doctors to remind themselves of alternate theories of the patient's present condition." *Court Doc. 24 at 4.* Brewer argues that her interpretation of Dr. Bilbool's notes is more consistent with the rest of the record, which contained a treatment plan including: "a prescription for Percocet[,]" and "the phone number for Lyrica ... as she may be a candidate for Lyrica in view of her fibromyalgia." *TR at 179.* Furthermore, Brewer argues that her referral to Dr. Douglas W. Roane, a rhuematologist, also establishes her disability due to fibromyalgia: "My suspicion, however, is that the labs are going to be negative, and all her symptoms are explainable on the basis of fibromyalgia." *Id. at 168.*

Brewer also argues that the Commissioner's arguments regarding her mental health are inaccurate. *Court Doc. 24 at 5.* She contends that her doctors did not note significant psychiatric symptoms, and that when she did see a mental health professional she was never advised to return. *Id.* But, Brewer states that "[she] is not opposed to seeing a competent psychiatrist." *Id. at 6.*

Brewer next contends that she meets the requirements for diagnosis of Chronic Fatigue Syndrome ("CFS"), and thus meets the

criteria for a medically determinable impairment.  *Id. at 7.*

Brewer states that she "has no reason to believe the defendants read the record until recently."  *Id. at 2.*  She does not believe that the Commissioners remand motion is made in good faith, and thus indicates remand to the agency for further proceedings would be futile.  *Id. at 2-3.*  Brewer asks that the Court reverse the Commissioner and award benefits.

## VI.   <u>DISCUSSION</u>

The initial question before the Court is whether the ALJ's decision is free of legal error, and whether substantial evidence supports the decision.  Having reviewed the record, the Court concludes that the ALJ's findings regarding Brewer's physical impairments are free of legal error and supported by substantial evidence, but his findings regarding her mental impairments are not.

### A.   <u>Brewer's Physical Impairments</u>

Brewer argues that in addition to fibromyalgia, the record conclusively establishes that she is disabled due to CFS – which she

contends is caused by the Epstein – Barr Virus ("EBV").[2]  At the

second step of the evaluation sequence, the ALJ is tasked with

determining if the claimant has a severe impairment.  20 C.F.R.

§ 404.1520(a)(4)(ii).  To qualify as an impairment under the Act, a

condition

> must result from anatomical, physiological, or psychological
> abnormalities which can be shown by medically acceptable
> clinical and laboratory diagnostic techniques.  A physical or
> mental impairment must be established by medical evidence
> consisting of signs, symptoms, and laboratory findings.

*Id*. at § 1508.  An impairment must significantly limit the claimant's

physical or mental ability to do basic work activities[3] in order to be

---

[2]The Court construes both Brewer's testimony at the hearing
before the ALJ and her arguments in her brief in response to the
Commissioner's motion as asserting disability due to Epstein – Barr
Virus caused Chronic Fatigue Syndrome.  At the hearing, Brewer did
not name CFS as a disabling medical condition, but she did name
EBV.  *TR at 29*.  Then, in her response brief, she contends she is
disabled due to EBV caused CFS.  *Court Doc. 24 at 6, 7*.  Thus, the
Court assumes Brewer is claiming that she is disabled due to CFS
caused by the EBV.

[3]Basic work activities include: physical functions such as
walking, standing, sitting, lifting, pushing, pulling, reaching,
carrying, or handling; capacities for seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgment; responding appropriately to supervision, co-workers
and usual work situations; and dealing with changes in a routine
work setting.  20 C.F.R. § 1521(b).

severe.  *Id*. at § 404.1520(c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Soc. Sec. Ruling No. 96-3p (1996)).  A claimant carries the burden of demonstrating a disability, but "the ALJ has a duty to assist in developing the record."  *Id*. (quoting *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998)).

At step two of the sequential evaluation, the ALJ concluded that Brewer's EBV/CFS was not medically determinable and thus not a severe impairment.  *TR at 11*.  In support of this finding, the ALJ stated that "there are no diagnoses of the condition or treatment for the condition after (or near) the claimant's alleged onset date."  *Id*. The ALJ further noted that one of Brewer's treating physicians noted a prior "positive blood test for Epstein – Barr[,]" but he did not then diagnose her with the condition "apparently due to the lack of other medical evidence establishing that she had Epstein – Barr at the time."  *Id*.

Consistent with the ALJ's findings, the Court concludes that

while the medical records do contain some evidence that Brewer exhibited some EBV/CFS symptoms, she has never been diagnosed with either EBV or CFS. *TR at 182 (Dr. Ahmed Madi, M.D., notes elevated Epstein – Barr titer, but states that "only indicates that she has been exposed to [Epstein–Barr] before.")* In both April and September of 2005, Brewer's lab results indicated elevated EBV titers and sensitivities, *id. at 158, 166*, and Dr. Stephen Cohen, M.D., noted on October 12, 2006, that her symptoms were "consistent with chronic fatigue syndrome ... ." *Id. at 173.* But, neither of these doctors diagnosed Brewer with EBV/CFS. Additionally, in March 2006, Dr. Hossam Zohary, M.D., was also unable to diagnose Brewer with EBV/CFS. *Id. 181.* From the record before the Court, it seems that Brewer's care providers have been informed, by Brewer, that she suffers from EBV/CFS. She has not, however, undergone a complete physical to establish that fact conclusively. Patient complaints alone are not sufficient to establish an impairment. 20 C.F.R. § 404.1508. Consequently, the Court concludes the ALJ's findings with respect to EBV/CFS are supported by substantial evidence and free of legal error.

Brewer also alleges that the ALJ erred in determining that her fibromyalgia does not meet the requirements for a listed impairment, and in determining her corresponding functional limitations. *TR at 12.* The ALJ found that fibromyalgia was a severe impairment, however, he determined that despite this impairment Brewer was not disabled. In support of these findings, the ALJ noted that the medical evidence indicates that Brewer can "ambulate effectively ... perform fine and gross movements effectively ... [and is] capable of living by herself." *Id.* Regarding the RFC determination, the ALJ noted that Brewer's "description of her disabling symptoms has been quite vague and general at times[,]" she participated in activities inconsistent with her complaints of disabling limitations, there are inconsistencies in her reports to medical providers, and none of her providers have placed limitations on her physical capabilities. *Id. at 14-15.*

The Court concludes that these findings are supported by substantial evidence in the record. Brewer's medical providers all noted that she was able to ambulate independently. *Id. at 176, 193 ("Gait is well balanced and strong"), 280 ("unremarkable gait"), 284.*

-14-

Brewer did not exhibit weakness in her extremities, and was able to go from a seated to standing position without difficulty. *Id. at 173, 178, 280, 284, 286, 288.* Additionally, her providers noted that she was "well developed, well nourished." *Id. at 184, 189, 220, 278, 280, 283.* Furthermore, Brewer testified that none of her care providers have placed any limitations on her physical capabilities. *Id. at 43.* In fact, some of her doctors recommended that she try to increase her activity level. *Id. at 168, 221.* Brewer's daily activities are also inconsistent with the amount of pain she reported to her providers. *Id. at 177 (Brewer reported riding her horse and falling off in September 2006), 189 (Brewer reports caring for and being kicked by horse in February 2007), 183 (May 2006, Brewer cared for and ran to dog's aid after dog was struck by a truck – she was bitten by dog in the process), 190 (November 2007, Brewer able to care for her cats).* The also ALJ properly pointed out that none of Brewer's health care providers noted any signs of atrophy, which would be expected if she had been bedridden for two years as reported. Accordingly, the Court affirms the ALJ's findings regarding Brewer's physical impairments and their corresponding functional limitations.

### B.   Brewer's Mental Impairments

The Commissioner has concedes that the ALJ erred in considering Brewer's possible mental impairments, and as a result, he failed to properly assess her corresponding functional limitations. *Court Doc. 23 at 14.*  The ALJ's opinion noted depression and anxiety as non-severe impairments that did not meet or medically equal the requirements of a listed impairment, *TR at 11-12.*  The ALJ also concluded that anxiety and depression did not result in any significant functional limitations when determining Brewer's RFC, *TR at 15.*  In coming to these conclusions, the ALJ stated that "these impairments had no more than a minimal limitation in the claimant's ability to do basic work activities ... ."  *Id. at 11.*  In concluding that Brewer's mental impairments were non-severe and did not meet the listing requirements, he noted that "the file contains no mental health treatment notes and no hospital or inpatient records for mental health symptoms, suggesting the claimant had very limited symptoms from her mental impairments."  *Id.  at 12.*

The Court concludes that the ALJ's findings regarding Brewer's mental impairments are not supported by substantial evidence.

Contrary to the ALJ's statements, Brewer's medical records are replete with concerns about her mental health.  For example, in May 2006, Dr. Madi noted "marked flight of idea and clear psychotic features" concluding that Brewer "probably has bipolar disorder with prominent mania and some psychotic features." *Id. at 182*.  He suggested that Brewer consult a psychiatrist, but noted Brewer became angry at the suggestion.  *Id. at 182, 186*.[4]  A short time later in May 2006, Dr. James Schellenger, M.D. noted that Brewer "appear[ed] manic" at her appointment.  *Id. at 187*.  Then, one week later on May 24, 2006, Tara Cooper, a physician's assistant, noted that Brewer had a "flat affect .. [did] not make good eye contact ... [and h]er conversation [was] not fluent with her thought process being from one topic to another in no apparent logical order.  She appear[ed] very paranoid and unable to make proper judgment." *Id. at 188*.  Additionally, in September 2006, Dr. Bilbool listed "[v]egetative depression" as a critical area of concern.  *Id. at 177*.

_____

[4]Transcript pages 182 and 186 are sequential pages of the same medical record, however, unrelated pages were inserted in the middle of this record.

Then, beginning in November 2007, Brewer began complaining of memory lapses and possible sexual assaults. *Id. at 190.* Brewer reported that she believed someone had been entering her bedroom window for over a year, replacing her medications, and raping her. *Id. at 190, 192, 227.* The medical examinations related to these reports showed "no signs of trauma or anything ... that would appear to be a rape." *Id. at 192.* Brewer also reported to medical professionals that she is being raped several times per week by someone coming into her house, the ranchers in the area have a conspiracy against her for which they are sending her messages through Direct TV. *Id.* In response to these reports, Brewer's care provider stated that these were not real events but psychiatric issues, and that she believed Brewer "is a victim of paranoid schizophrenia ... and needs to be diagnosed by a psychiatrist." *Id. at 192-193.*

In a social security case, the ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks omitted).

> When a claimant is unrepresented, however, the ALJ must be
> especially diligent in exploring for all the relevant facts. *Cox v.*
> *Califano*, 587 F.2d 988, 991 (9th Cir. 1978). ... The ALJ's duty
> to develop the record fully is also heightened where the
> claimant may be mentally ill and thus unable to protect her
> own interests. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.
> 1992). Ambiguous evidence, or the ALJ's own finding that the
> record is inadequate to allow for proper evaluation of the
> evidence, triggers the ALJ's duty to "conduct an appropriate
> inquiry." *Smolen [v. Chater]*, 80 F.3d 1273, 1288 (9th Cir.
> 1996).

*Tonapetyan*, 242 F.3d at 1150. The Ninth Circuit determined that

even though the ALJ in *Tonapetyan* did not make a specific finding

that the evidence regarding the claimant's mental impairment was

ambiguous, or that he lacked insufficient evidence, remand was

nonetheless appropriate because the ALJ had relied heavily upon the

testimony of a medical expert who found the evidence insufficient.

*Id.*

Here, like the situation in *Tonapetyan*, the ALJ relied heavily

upon a medical expert who found the record insufficient with respect

the claimant's mental impairments. The ALJ gave great weight to

the opinion of Dr. Marsha McFarland, Ph.D., a Disability

Determination Services' evaluator, who concluded that there was

insufficient evidence to determine Brewer's mental functional

limitations.  *TR at 13, 216.*  Dr. McFarland indicated an anxiety disorder and probable bipolar or thought disorder, *id. at 209, 211*, but, she found "there is insufficient evidence to assess her level of functioning for the period under consideration," *id. at 216.*  As in *Tonapetyan*, the medical expert here felt there was insufficient evidence to determine Brewer's functional limitations.  Despite this finding, the ALJ "conclude[d] that there [was] enough evidence … ."  *Id. at 13.*  Due to his heavy reliance on Dr. McFarland, the ALJ was not free to ignore her belief that the record was insufficient.  *See Tonapetyan*, 242 F.3d at 1150.

Given the factual record before the Court, and the ALJ's admitted reliance on Dr. McFarland, Brewer's claim must be remanded to the agency for further development of the record regarding her mental impairments and corresponding functional limitations.  Due to the ALJ's heavy reliance on Dr. McFarland, he was not free to ignore her belief that the record was insufficient to assess Brewer's functional limitations.

### III.   <u>CONCLUSION</u>

In light of the foregoing,

-20-

IT IS ORDERED that the Commissioner's motion (Court Doc. 22) is GRANTED.  The Commissioner's determination is AFFIRMED with respect Brewer's physical impairments and their corresponding functional limitations, but REVERSED with respect to Brewer's mental impairments and their corresponding functional limitations.

IT IS FURTHER ORDERED that the case is REMANDED to the Agency, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this disposition. Pursuant to 42 U.S.C. § 405(g)[5] and Fed. R. Civ. P. 58, the Clerk of Court is directed to enter judgment accordingly, and to notify the parties of the making of this Order.

DATED this 5th day of October, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge

---

[5]The remand Order is entered pursuant to sentence four of 42 U.S.C. § 405(g) which provides:

The court shall have power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

-21-